Eugene Ashley (SBN 171885)
eugene.ashley@hogefenton.com
Ronald C. Finley (SBN 200549)
ronald.finley@hogefenton.com
Alfredo A. Bismonte (SBN 136154)
alfredo.bismonte@hogefenton.com
Remington Lenton-Young (SBN 295392)
remington.lenton-young@hogefenton.com
HOGE, FENTON, JONES & APPEL, INC.
55 South Market Street, Suite 900
San Jose, California 95113-2324
Phone: 408.287.9501
Fax: 408.287.2583

Attorneys for Plaintiffs Sherratt
Reicher Revocable Trust, Mattie
Cooper, Clayton Wiedemann, Tiffany
Miller, Twin Creeks Development,
LLC, and MCG Investments and
Holdings, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sherratt Reicher Revocable Trust, Mattie Cooper, Clayton Wiedemann, Tiffany Miller, Twin Creeks Development, LLC, and MCG Investments and Holdings, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> NutraNomics, Inc., Stephen M. Hicks, Jonathan Bishop, and Geoff Bazegian, <br><br> Defendants. | Case No. 2:23-CV-003045 <br><br> **COMPLAINT FOR RESCISSION OF MERGER** <br><br> **JURY TRIAL REQUESTED** |

Plaintiffs Sherratt Reicher Revocable Trust, Mattie Cooper, Clayton

Wiedemann, Tiffany Miller, Twin Creeks Development, LLC, and MCG

Investments and Holdings, LLC, (collectively, "Plaintiffs"), hereby allege and

exercise their right to recission and associated claims, including the right to

a temporary restraining order and preliminary injunction, based on the

following:

## INTRODUCTION

1.      This is an action for recission, pursuant to but not limited to Sections 5 and 12(a) of the Securities Act of 1933 (the "1933 Act"), based on Defendants conducting an unregistered equity exchange merger[1] which included an issuance of stock that did not qualify for any exemption to registration due to the significant participation of a "bad actor" defendant. The purpose of the transaction was to merge three companies belonging to Plaintiffs into Defendant NutraNomics, Inc. to create an enlarged entity to undertake manufacturing, and distribution based out of a plant located at 18194 Blue Dream Crossing, Desert Hot Springs, California, 92240 in Riverside County (the "Plant"). As part of the transaction, Plaintiffs received approximately 30% of NutraNomics, Inc.'s stock.

2.      Additionally, ongoing malfeasance by the Defendants justifies immediate injunctive relief including a temporary restraining order and a preliminary injunction, and appointment of a receiver to avoid irreparable harm.

## THE PARTIES

3.      Plaintiff Sherratt Reicher Revocable Trust ("SRRT") is a California Trust existing under the laws of the State of California, having its principal place of business in Contra Costa County, State of California and whose trustee is Sherratt Reicher.

4.      Plaintiff Mattie Cooper ("Cooper") is a woman who at all relevant times is and was a resident in the County of Contra Costa, State of California.

5.      Plaintiff Clayton Wiedemann ("Wiedemann") is a man who at all

---

[1] The Merger closed in late April 2022.

1  relevant times is and was a resident of County of Contra Costa, State of

2  California.

3        6.   Plaintiff Tiffany Miller ("Miller") is a woman who at all relevant

4  times is and was a resident of Lake Oswego, County of Clackamas, State of

5  Oregon.

6        7.   Plaintiff Twin Creeks Development, LLC ("Twin Creeks") is a

7  limited liability corporation existing under the laws of the State of California

8  and whose principal place of business is in the County of Alameda, State of

9  California.

10        8.   Plaintiff MCG Investments and Holdings, LLC ("MCG") is a

11  limited liability corporation existing under the laws of the State of California

12  and whose principal place of business is in the County of Contra Costa,

13  State of California.

14        9.   Plaintiffs believe and therefore allege that Defendant

15  NutraNomics, Inc. ("NutraNomics") is now, and at all times mentioned in this

16  Complaint was, a Domestic Profit Corporation existing under the laws of

17  Wyoming, with its principal office located at 36 Shadow Brook Lane, Lander,

18  Wyoming, 82520, in Fremont County. NutraNomics has also filed documents

19  with the United States Securities and Exchange Commission, including a

20  Form 1-A Regulation A Offering Statement on July 29, 2021, which states

21  that its Principal Executives Offices are located at 605 Portland Ave., Suite

22  154, Gladstone, Oregon 97027.

23        10.   NutraNomics stock is publicly traded on the OTC Markets stock

24  exchange (Pinks Limited Information) under the ticker symbol NNRX.

25        11.   Plaintiffs believe and therefore allege that at all relevant times

26  Defendant Stephen M. Hicks ("Hicks") was and is a resident of the town of

27  Ridgefield, State of Connecticut. Hicks owns, controls and operates a

28  business entity called Southridge. Pursuant to the Letter of Intent described

below, Southridge was expected to provide financing to support efforts to merge the Plaintiffs' Companies (defined below) with NutraNomics.

12. Plaintiffs believe and therefore allege that at all relevant times Defendant Jonathan Bishop ("Bishop") was and is a resident of the State of Oregon. On information and belief, Bishop is the Chief Executive Officer of NutraNomics.

13. Plaintiffs believe and therefore allege that at all relevant times Defendant Geoff Bazegian ("Bazegian") was and is a resident of the Commonwealth of Massachusetts. On information and belief, Bazegian is the President of NutraNomics.

14. Plaintiffs allege that all Defendants, and each of them, were acting as the partners, agents, servants, employees, representatives, or contractors of the other Defendants, and were acting within the course and scope of such relationship, with the knowledge, express or implied, of each other named Defendant.

## JURISDICTION AND VENUE

15. The court has jurisdiction over this action pursuant to Section 22a of the 1933 Act, as amended (15 U.S.C.A. § 77v(a)); and under the provisions of 28 U.S.C.A. § 1331 because the action arises under the laws of the United States, that is, the provisions of the 1933 Act and the Securities Exchange Act of 1934 (the "Exchange Act"). Jurisdiction of the California law causes of action in this Complaint are based on the principles of pendent jurisdiction.

16. Venue is appropriate before this court as the focus and subject of the merger to be rescinded is the Plant and related facilities, taken over by NutraNomics, which are located in the County of Riverside, State of California.

17. Defendants, directly and indirectly, have made use of the means

and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and/or the mails, in connection with the acts, practices, and courses of business that are the subject of this Complaint.

## BACKGROUND

**A.    Merger Agreements**

18.    From at least 2021, Plaintiffs owned three entities in California based in Riverside County, California: (1) DHS Development, Inc. (focused on manufacturing, research and development, and packaging); (2) RCW Investments, Inc. (focused on brand/formulation of intellectual property); and (3) DHS10, Inc. (focused on farming) (collectively, "Plaintiffs' Companies").

19.    On or about January 18, 2022, NutraNomics entered into a Letter of Intent ("LOI") wherein, subject to terms and conditions, NutraNomics proposed to acquire the Plaintiffs' Companies in return for NutraNomics stock. A true and correct copy of this LOI is attached to the Complaint as **Exhibit 1** and is incorporated herein.

20.    Pursuant to the LOI, within 48 hours after full execution of the agreement, "Southridge" (which in fact is and was a financial entity owned, controlled and operated by Hicks) would provide interim financing of up to $1,000,000. In addition, after close of the acquisition, Southridge under the LOI would receive shares of NutraNomics. After the LOI but prior to the Merger (defined further below), Bishop and Bazegian informed Plaintiffs that Hicks through Southridge had provided $1,000,000 in interim financing to support the Merger which financing was converted to a capital investment in Hicks' name of 10% of NutraNomics stock. In Plaintiffs' negotiations regarding financing with Bishop and Bazegian about the LOI and upcoming Merger, Bishop and Bazegian regularly stated that they needed to seek approval from Hicks. Bishop and Bazegian subsequently shared with

1   Plaintiffs the instructions (approving or rejecting financing terms) they
2   claimed they received from Hicks. Hicks was an active participant in the LOI
3   and in the solicitation and promotion of the Merger, and participated in
4   interstate telephone conferences with Plaintiffs in negotiating and leading up
5   to the Merger. Additionally, Hicks' Southridge (through Southridge
6   employees and representatives, including Hicks) participated fully in
7   promoting and organizing the Merger.

8       21.    This merger negotiation eventually matured from the LOI into a
9   series of agreements to merge the Plaintiffs' Companies into NutraNomics
10  including: (1) Agreement and Plan of Merger, (dated March 24, 2022 for
11  reference purposes but not fully executed until on or around April 5, 2022);
12  and (2) Closing Agreement dated April 27, 2022 (collectively "the Merger
13  Agreements"). The Merger Agreements provided that Plaintiffs would
14  receive NutraNomics securities. A true and correct copy of the Merger
15  Agreements is attached as **Exhibit 2** to this Complaint and is incorporated
16  herein.

17      22.    The Merger Agreements provided, *inter alia,* the merger of the
18  Plaintiffs' Companies into NutraNomics in return for 30% of NutraNomics'
19  common stock and certain Plaintiffs receiving three seats (out of a total of
20  six seats) on the NutraNomics Board of Directors. NutraNomics completed
21  the merger and acquisition of the Plaintiffs' Companies effective April 28,
22  2022 (the "Merger").

23      23.    Each and every one of the Defendants fully participated in
24  soliciting, promoting, negotiating and otherwise consummating the Merger.

25      24.    Attached collectively as **Exhibit 3** is the NutraNomics' Form 8-K
26  Report as well as a NutraNomics' press release that NutraNomics filed with
27  the Security and Exchange Commission or about May 16, 2022 in which
28  NutraNomics confirmed that the Merger was effective as of April 28, 2022.

25.     The Merger included an issuance of securities but was not pursuant to a registered offering or applicable exemption to registration. Therefore, the Merger violated Section 5 of the 1933 Act.

**B.      Hicks is a Bad Actor Permanently Barred by FINRA**

26.     Unbeknownst to Plaintiffs until after the Merger, on or about February 10, 2018, the Securities and Exchange Commission obtained a nearly $13 million judgment against Southridge Capital Management LLC and its fund manager, Hicks. *See SEC v. Southridge Capital Management LLC* (D. Conn. Case No. 10-cv-1685) (the "SEC Action"). As set forth in the SEC Litigation Release, dated February 15, 2018, the judgment was based on violations of the 1933 Act and the Exchange, and required disgorgement and prejudgment interest of $7,864,066. As set forth in the SEC Litigation Release, the court judgment found that "Hicks also must pay a $5 million penalty." The February 10, 2018 judgment eventually led to an Amended Final Judgment dated April 4, 2022. A true and correct copy of this SEC Litigation Release and the Amended Final Judgment is attached collectively as **Exhibit 4** and incorporated by reference herein.

27.     Further, unbeknownst to Plaintiffs until after the Merger, based on the SEC Action and judgment obtained against Hicks by the SEC, the Financial Industry Regulatory Authority ("FINRA") issued a "Bar (Permanent)" against Hicks (the "FINRA Action"). A true and correct copy of the FINRA report documenting the FINRA Action regarding Hicks is attached as **Exhibit 5** and incorporated by reference herein.

**C.      Hicks' Conduct Disqualifies this Unregistered Securities Transaction From any Applicable Exemption**

28.     Under Section 5 of the 1933 Act (15 U.S.C. §77e), all issuers of securities must register non-exempt securities with the Securities and Exchange Commission.

29.    The Merger is a "business combination" (17 CFR §§ 230.165(f)(1) and 230.501(d)) of the type deemed to be a securities transaction of the type specified in paragraph (a) of Rule 145 under the Exchange Act (17 CFR §230.145). This includes any transaction involving the acquisition by one issuer, in exchange for all or part of its own or parent's stock of another issuer if, immediately after the acquisition, the acquiring issuer has control of the other issuer.

30.    The Merger was an unregistered securities transaction purportedly exempt from registration with the Securities and Exchange Commission under SEC Regulation D (17 CFR §230.500 et seq.) promulgated pursuant to Section 4(a)(2) of the 1933 Act.

31.    But because of the participation of Hicks and his promotional efforts relating to the Merger, including his participation in many interstate phone calls prior to the execution of the LOI and thereafter, the exemption under Regulation D as amended does not apply. Rule 506(d), (17 CFR §230.506(d)), precludes use of the Regulation D exemption given the participation of "bad actor" Hicks and the Hicks-controlled Southridge.

32.    Hicks was a promoter of the Merger and was integrally involved in the structuring, negotiation and closing of the Merger transaction. He is a "bad actor" in light of the SEC Action and the FINRA Action.

33.    Hicks worked in cooperation, coordination, and in concert with each of the other Defendants as part of the effort leading up to Merger and the Merger Agreement documentation. All Defendants knew or should have known that Hicks was a "bad actor." None of the Defendants disclosed to any Plaintiff the "bad actor" status of Hicks. But whether or not such disclosure was made, each Defendant violated Section 5 of the Securities Act of 1933 which has a strict liability requirement and does not require scienter.

34.   Plaintiffs are informed and believe that at the time of the Merger, Defendants were aware of the "bad actor" status of Hicks. Plaintiffs, unlike Defendants, were not aware of the "bad actor" status of Hicks. Accordingly, to Plaintiffs' detriment, they reasonably relied upon Defendants' representations that no law would be violated by way of the Merger transaction.

35.   Plaintiffs are entitled to recission of the Merger because Defendants violated Section 5 and Section 12(a)(1) (15 U.S.C. § 77l) of the 1933 Act. Plaintiffs' remedies include recission of the Merger and the unwinding of the Merger, as well as compensation for damages suffered in relation to the Merger. All Defendants, and each of them, are jointly and severally liable for any Section 5 violation of the 1933 Act and any associated remedy including under Section 12 of the 1933 Act.

36.   Plaintiffs only discovered Hicks' "bad actor" status, including the SEC Action and FINRA Action, on or about December 2022.  The Merger Agreement documents were not fully executed until April 27, 2022 and, as admitted by NutraNomics in its SEC filings (**Exhibit 3**), the Merger did not close until April 28, 2022. Accordingly, there is no statute of limitations bar to Plaintiffs' action for recission of the Merger under applicable Federal law. *See* 15 U.S.C. §77m.

37.   If Plaintiffs had known of Hick's "bad actor" status, no Plaintiff would have agreed to the Merger or executed the Merger Agreements. Plaintiffs reasonably relied upon the Defendants' representations that the Merger transaction would not violate any law.

38.   The status of Hicks as a "bad actor" is a material fact and if known by Plaintiffs would have led them not to enter into the Merger. Defendants non-disclosure to Plaintiffs of the status of Hicks as a "bad actor" was a purposeful, intentional omission, or at least a negligent omission.

39.    Plaintiffs demand a recission of the Merger Agreements, including an unwinding of the Merger and return of the Plaintiffs' Companies to their pre-merger status and condition.

**D.    Defendants' Malfeasance Subsequent to the Merger Justifies Appointment of a Receiver to Take Charge of NutraNomics**

40.    Plaintiffs are informed and believe and therefore allege that before and after the Merger, NutraNomics, which is run and controlled by the other Defendants, took over the Plant and has undertaken at least the acts of malfeasance as set for in this paragraph (collectively, "Malfeasance"):

        a.    On information and belief, by the beginning of 2023, NutraNomics had approximately 80 employees working at the location of the Plant. But today, the majority of the employees have been terminated by NutraNomics. The skeleton crew of remaining employees is insufficient to manufacture the products NutraNomics is under contract to produce. Further, for the last approximately four months, NutraNomics has failed to pay California payroll taxes to the State of California and the Internal Revenue Service for its employees in violation of NutraNomics' legal obligations. Plaintiffs are informed and believe that as of February 2023, NutraNomics owes at least $120,000 in overdue taxes.

        b.    NutraNomics has also incurred approximately $5,000,000 in debts under promissory notes dated April, May, June, September, November and December 2022. Such debt payments are now in arrears as NutraNomics has not made any required payments of principal towards those debts. As a result, on April 4, 2023, Plaintiff-related entities filed a lawsuit (Case No. C23-00820) in the Superior Court of the State of California,

County of Contra Costa against NutraNomics for payment of these promissory notes.

c.      Since at least December 2022, NutraNomics has ceased paying rent to the landholder upon which the Plant facility is a tenant. As of April 2023, $988,000 in rent is in arrears and due and payable by NutraNomics. This non-payment of rent subjects the Plant controlled by NutraNomics to eviction and the closure of the Plant.

d.      Before and continuing after the Merger, Defendants misled Plaintiffs and the investing public by intentionally omitting material information from its filing with the Securities and Exchange Commission Form 1-A Regulation A Offering Statements under the 1933 Act on July 29, 2021, August 13, 2021, September 17, 2021, and September 29, 2022. These documents were filed by NutraNomics purportedly confirming offering exemptions under SEC Regulation A (17 CFR Part 230, et seq). But none of these Form 1-A filings disclosed the "bad actor" status of Hicks.  Nevertheless, the purportedly disclosed and anticipated funding plan exempted from registration with the Securities and Exchange Commission under Regulation A had "Southridge" representatives as active negotiation participants. On information and belief, Hicks participated and continues to participate in that referenced offering and so disqualifies such offerings from exemption under Regulation A (17 CFR §230.262).

e.      While three of the Plaintiffs' representatives, namely Sherratt Reicher, Mattie Cooper and Clayton Wiedemann, were appointed to the NutraNomics' Board of Directors as part of the

Merger, the reality is that no NutraNomics Board Meetings have been held since the Merger despite Plaintiffs' requests. Further, in mid-March 2023, Defendants unilaterally terminated Board Members Sherratt Reicher, Matter Cooper and Clayton Wiedemann's access to the NutraNomics-controlled email system. Accordingly, Defendants have, without proper notice to or approval by the Board, improperly and unilaterally acted, in an *ultra vires* manner, including settling a significant legal dispute between NutraNomics and a third party investment fund or group as well as negotiating further capital raises and a potential merger with other companies. Such *ultra vires* actions by Defendants' since the Merger have also violated the specific requirements under the Shareholder Voting Agreement, attached as Exhibit C to the attached Agreement and Plan of Merger (see **Exhibit 2**), including non-Board approved expenditures in excess of $400,000 per occurrence and $5,000,000 per year other than in the ordinary course of business (Section 3.1(b) of Exhibit C) and the incurrence of debt in excess of $400,000 or $5,000,000 per year, other than in the ordinary course of business (Section 3.1(d) of Exhibit C).

f.      NutraNomics has failed to pay its corporate legal counsel, Attorney Jeff Turner, causing him to suspend legal services to NutraNomics.

g.      NutraNomics has not paid contractors who provided services to the Plant facilities. This has led to threats of filing a mechanics' lien. By way of example, Sharp Electric on December 1, 2022, invoiced NutraNomics for payment for providing power and hooking up light fixtures, emergency shut

offs, exhaust fans and gas detectors at the Plant. In April 2023, Sharp Electric threatened to file a mechanics lien for non-payment.

41.  On information and belief, Plaintiffs allege that Defendants never intended to abide by the terms of the Merger, never intended to repay funds loaned to NutraNomics from Plaintiffs and Plaintiff-related persons and entities, and at all relevant times planned to execute the acts of Malfeasance identified above.

42.  By letter dated March 14, 2023, Plaintiffs wrote Defendants demanding recission of the Merger and requested a response by March 20, 2023. To date, Defendants have not responded. Accordingly, there is an actual case and controversy between the parties as to the recission of the Merger.

## FIRST CAUSE OF ACTION

### (Recission In Violation of Section 5 of the Securities Act of 1933)
### (Against all Defendants)

43.  Plaintiffs incorporate by reference and re-allege each and every allegation set forth in paragraphs 1 to 42 above, inclusive, as if fully set forth herein.

44.  The Merger and Merger Agreements constituted a transaction of unregistered securities in violation of Section 5 of the 1933 Act and is actionable, including for recission, under Section 12(a)(1) of the 1933 Act.

45.  No exemption exists under Section 4(a)(2) of the 1933 Act, and Regulation D promulgated thereunder, for the Merger because Hicks is a "bad actor" who was a promoter of the Merger and was integrally involved in the structuring, negotiating and the closing of the Merger transaction.

46.  All Defendants used the means or instruments of transportation or communication in interstate commerce or the mails to offer to sell or offer

to buy through the use or those securities related to the Merger, as described above, without a registration statement having been filed or being in effect with the Securities and Exchange Commission as to those securities.

47.     Plaintiffs hold shares of NutraNomics, issued to them as part of the Merger.

48.     Defendants are jointly and severally liable to Plaintiffs for violation of Section 5 of the 1933 Act.

49.     Plaintiffs hereby demand and are entitled to a recission of the Merger and return of their control of the Plaintiffs' Companies which were subject to the Merger.

## *SECOND CAUSE OF ACTION*

**(Fraud in Violation of Section 10(b) and Rule 10b-5 of the Exchange Act of 1934)**

**(Against all Defendants)**

50.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth in paragraphs 1 to 49 above, inclusive, as if fully set forth herein.

51.     The Merger and Merger Agreements constituted a transaction of unregistered securities in violation of Section 5 of the 1933 Act.

52.     Since at least January 2022, and continuing to at least the date of the Merger on or around April 28, 2022, Defendants, and each of them, directly and indirectly, by use of the means of instruments of transportation or communications in interstate commerce or by use of the mails, in the offer or sale of securities as described in this Compliant, have knowingly or recklessly employed devices, schemes or artifices to make untrue statements of material facts and omitted to state material facts necessary to make the statement made, in light of the circumstances under which they

1  were made, not misleading.

2       53.   At all relevant times, Defendants knew that Hicks' "bad actor"

3  status precluded use of Regulation D as an exemption to registering the

4  Merger with the Securities and Exchange Commission.

5       54.   Nevertheless, prior to and leading up the Merger, Defendants

6  never informed Plaintiffs that registration of the Merger transaction was

7  required.

8       55.   In truth and in fact, Defendants, and each of them actively

9  concealed or purposefully omitted from Plaintiffs the material fact that Hicks

10  was a "bad actor" and so the Merger transaction was not exempt from

11  registration with the Securities and Exchange Commission.

12       56.   Plaintiffs would never have proceeded with or closed the Merger

13  if Plaintiffs had known that Hicks was a "bad actor."

14       57.   Plaintiffs, to their detriment, reasonably relied upon the

15  Defendants representations and associated conduct that the Merger

16  transaction need not be registered with the Securities and Exchange

17  Commission. As a result, Plaintiffs have incurred damages according to

18  proof.

19       58.   Due to the foregoing, Defendants, and each of them, have

20  violated Section 10(b) of the Exchange Act (15 U.S.C.A. § 78j(b)), and Rule

21  10b-5 (17 C.F.R. § 240.10b-5). Therefore, recission of the Merger is

22  required. Plaintiffs request an award of associated damages according to

23  proof.

24           **THIRD CAUSE OF ACTION**

25  **(Violation of California Corporations Code §§25401, 25501 and 25504.1)**

26           **(Against all Defendants)**

27       59.   Plaintiffs incorporate by reference and re-allege each and every

28  allegation set forth in paragraphs 1 to 58 above, inclusive, as if fully set forth

herein.

60.    California Corporations Code ("Corp. Code") § 25401 makes it unlawful for any person to sell a security in California by means of communications which include an untrue statement of a material fact or omits to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading.

61.    Defendants at least omitted the "bad actor" status of Hicks in communications with Plaintiffs. For the reasons set forth above, the "bad actor" status of Hicks and the Merger-related efforts by Hicks and Southridge (a business entity controlled by Hicks), required registration of the Merger. But no such registration occurred.

62.    Although Defendants were aware of the "bad actor" status of Hicks, Plaintiff were unaware of this material fact and Defendants' failure to disclose to Plaintiffs the "bad actor" status of Hicks was misleading.

63.    Plaintiff would never have entered into the Merger if they had been aware of the "bad actor" status of Hicks.

64.    Defendants therefore have civil liability to Plaintiffs under at least Corp Code §§25501 and 25504.1 which in this circumstance gives Plaintiffs the right of recission of the Merger and return of Plaintiffs' consideration plus interest at the legal rate.

### **FOURTH CAUSE OF ACTION**

### **(Fraud Under California Law)**

### **(Against all Defendants)**

65.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth in paragraphs 1 to 64 above, inclusive, as if fully set forth herein.

66.    Defendants, and each of them, represented to Plaintiffs that the

1  Merger did not require a registration of the securities transaction with the

2  Securities and Exchange Commission.

3      67.   In truth and in fact, Defendants knew or should have known that

4  due to the "bad actor" status of Hicks, registration of the Merger with the

5  Securities and Exchange Commission was required. But Defendants

6  mispresented, concealed, or chose not to disclose the "bad actor" status of

7  Hicks, which disqualified the Merger from being an unregistered securities

8  transaction.

9      68.   The failure of Defendants to disclose Hicks' "bad actor" status

10  was intended to induce Plaintiffs to enter into the Merger and execute the

11  Merger Agreements.

12      69.   Plaintiffs reasonably and justifiably relied upon the

13  representations of Defendants to Plaintiffs' detriment.

14      70.   Plaintiffs would never have entered into the Merger or executed

15  the Merger Agreements if Plaintiffs had known of Hicks' "bad actor" status.

16      71.   Further, at all relevant times prior to the Merger, Defendants

17  intended to undertake the acts of Malfeasance but purposely did not

18  disclose, and in fact hid, their intention to commit the Malfeasance.

19      72.   Plaintiffs reasonably and justifiably relied on the Defendants

20  undertaking Defendants' obligations, including Defendants not committing

21  the acts of Malfeasance.

22      73.   Defendants, however, disregarded their obligations to Plaintiffs

23  including by committing the Malfeasance.

24      74.   Plaintiffs suffered damages including losing control of the

25  Plaintiffs Companies due to the fraudulent activity of Defendants and

26  Defendants' acts of Malfeasance. Accordingly, Plaintiffs are entitled to a

27  recission of the Merger, a return of the Plaintiffs Companies to their control

28  and all damages suffered by Plaintiffs.

# **FIFTH CAUSE OF ACTION**

## **(Negligent Misrepresentation Under California Law)**

## **(Against all Defendants)**

75.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth in paragraphs 1 to 74 above, inclusive, as if fully set forth herein.

76.     Defendants, and each of them, negligently represented to Plaintiffs that the Merger did not require a registration of the securities transaction with the Securities and Exchange Commission and Defendants had no reasonable basis to believe that the non-registration complied with applicable laws when the representations were made.

77.     In truth and in fact, Defendants knew or should have known that due to the "bad actor" status of Hicks, non-registration of the Merger with the Securities and Exchange Commission was not permitted. But Defendants negligently mispresented, concealed, or chose not to disclose the "bad actor" status of Hicks which disqualifies the Merger from being an unregistered securities transaction.

78.     Plaintiffs reasonably and justifiably relied upon Defendants' misrepresentations.

79.     Plaintiffs would never have entered into the Merger or executed the Merger Agreements if Plaintiffs had known of Hicks' "bad actor" status.

80.     Further, at all relevant times prior to the Merger, Defendants intended to undertake the acts of Malfeasance but negligently failed to disclose their intention to commit the Malfeasance.

81.     Plaintiffs reasonably and justifiably relied on the Defendants undertaking Defendants' obligations, including Defendants not committing the acts of Malfeasance.

82.     Defendants, however, disregarded their obligations to Plaintiffs

including by committing the Malfeasance. As a result, Plaintiffs suffered damages.

Plaintiffs suffered damages including losing control of the Plaintiffs Companies due to the negligent misrepresentations of Defendants and Defendants' acts of Malfeasance. Plaintiffs also suffered damages including losing control of the Plaintiffs' Companies due to the negligent misrepresentation of Defendants. Accordingly, Plaintiffs are entitled to a recission of the Merger, a return of the Plaintiffs Companies to their control and compensation for all damages suffered by Plaintiffs.

## SIXTH CAUSE OF ACTION

### (For Declaratory Relief)

### (Against all Defendants)

83. Plaintiffs incorporate by reference and re-allege each and every allegation set forth in paragraphs 1 to 82 above, inclusive, as if fully set forth herein.

84. There exists an actual controversy between Plaintiffs and Defendants. By letter dated March 14, 2023, Plaintiffs demanded that Defendants agree to a recission of the Merger. Plaintiffs demanded a response by March 20, 2023. To date, no such response has been provided by Defendants.

85. Accordingly, Defendants seek a judicial finding of the parties' rights and obligations regarding the Merger and the Merger Agreements, including a finding that the Merger be rescinded and the Merger be declared null and void.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for relief against Defendants, and each of them, as follows:

1. For recission of the Merger and all associated Merger

Agreements pursuant to Sections 5 and 12(a) of the 1933 Act as well as under California Civil Code §1689(b) and California Corporations Code §§25401, 25501 and 25504.1;

2.      That all parties be returned to the same position as they were prior to the Merger;

3.      For injunctive relief including a temporary restraining order and a preliminary injunction;

4.      For appointment of a receiver over NutraNomics, at least as to the Plant located in Riverside County, California;

5.      For an order of this Court declaring the Merger Agreements null and void;

6.      For damages according to proof;

7.      For punitive damages pursuant to Plaintiffs' fraud causes of action;

8.      That Plaintiffs be awarded their attorney's fees and costs; and

9.      That Plaintiffs be granted such other and further relief as the Court may deem just and proper.

//
//
//
//
//
//

1    DATED:  April 21, 2023          HOGE, FENTON, JONES & APPEL, INC.

2

3

4                                          By:      /s/ Eugene Ashley
                                                   Eugene Ashley
5                                                  Attorneys for Plaintiffs Sherratt Reicher
                                                   Revocable Trust, Mattie Cooper,
6                                                  Clayton Wiedemann, Tiffany Miller,
                                                   Twin Creeks Development, LLC, and
7                                                  MCG Investments and Holdings, LLC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2
        Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby

3
demand a trial by jury on all issues so triable.

4

5
DATED:  April  21, 2023        HOGE, FENTON, JONES & APPEL, INC.

6

7

8                                   By:  _____/s/ Eugene Ashley_____

9                                        Eugene Ashley
                                         Attorneys for Plaintiffs Sherratt Reicher
10                                        Revocable Trust, Mattie Cooper,
                                         Clayton Wiedemann, Tiffany Miller,
11                                        Twin Creeks Development, LLC, and
                                         MCG Investments and Holdings, LLC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28